639 A.2d 1293

**Rebecca A. PIFER, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD
OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 25, 1993.

Decided March 30, 1994.

Clarence E. Allen, for petitioner.

Judith M. Gilroy, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

DOYLE [1], Judge.

Rebecca Pifer (Claimant) appeals an order of the Unemployment Compensation Board of Review (Board) denying her benefits.

Claimant was employed by Dauphin Manor (Employer) as a licensed practical nurse and, in November of 1990, Claimant sustained a work-related injury. Sometime after the date of her injury, Claimant returned to work in a light duty position where she continued to work until June 12, 1992.[2] Claimant, on her next scheduled work day, and each work day thereafter, reported off work because she was ill in accordance with Employer's procedures. On July 7, 1992, Claimant's condition worsened and she was sent to the hospital by her doctor directly from the doctor's office. After she was hospitalized, she informed the Employer's supervisory staff that she would be in the hospital indefinitely. On July 14, 1992, Employer discharged Claimant for abandoning her job when she failed to report off work each day she was in the hospital even though she had already informed Employer that her hospital stay was indefinite.

The Bureau of Unemployment Compensation and Allowances (Bureau) denied Claimant's application for benefits on

1. This case was reassigned to the opinion writer on December 14, 1993.

2. It is not clear from the record exactly what Claimant's job situation was prior to her last day of work, and the Board made no findings of fact on that question. While those facts are not necessary to resolve the issues in this case, certain documents and testimony in the record give some insight into what transpired. In Exhibit 9, Dr. Suzanne Kelley, Claimant's physician stated that Claimant could return to work on April 6, 1992, performing sedentary work, two hours per day, three days per week. Further, Claimant, in the Summary of Interview, stated that she began working four hours per day on June 8, 1992. Employer's personnel director likewise testified at the hearing before the referee that prior to Claimant's last day of work, Claimant was working a reduced number of hours in a light duty position. However, the personnel director also testified that Claimant was "released" by another physician, to return to forty hours of light duty work per week and that, on June 19, 1992, she ordered Claimant to return to forty hours of work per week or face disciplinary action.

the grounds that she was not able and available for suitable work, and that she committed willful misconduct by not calling off work each day during her hospitalization. The Bureau concluded that Claimant was not available for work based on the response it received on its Physician's Certification Form (U.C. form no. 796) which Claimant's physician, Dr. Suzanne Kelley, filed on August 4, 1992, stating that the duration of Claimant's disability was "unknown" and listing certain physical limitations that would impact upon her ability to accept employment (i.e., limited lifting to a maximum of ten pounds and prohibited long periods of standing or sitting).

Claimant appealed to the referee, who reversed the Bureau and granted Claimant benefits. The referee concluded that Claimant's failure to report off from work was not willful misconduct, because her unreported absences were a result of a medical emergency; the referee also determined that Claimant was able and available for work. The referee further rejected Dr. Kelley's report on the basis that it was hearsay.

Employer appealed to the Board, which affirmed the referee's conclusion that Claimant did not commit willful misconduct by failing to call off from work. The Board, however, relying on Dr. Kelley's certification, found that Claimant's medical condition rendered her unavailable for work and reversed the referee on that issue and denied Claimant benefits. This appeal followed.

Claimant contends that the Board's determination that she was not able and available for work as a result of her medical condition is not supported by substantial evidence.

■ Section 801(d)(1) of the Unemployment Compensation Law (Law)[3] provides that benefits are payable in the event that the claimant is able and available for suitable work. In order for a claimant to be available for work, he or she must be ready and able to accept employment and be actually and currently attached to the labor force. *Craig v. Unemploy-*

3. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(d)(1).

*ment Compensation Board of Review,* 65 Pa. Commonwealth Ct. 305, 442 A.2d 400 (1982).

The record shows that Claimant was fired by Employer for abandoning her job, *i.e.* for willful misconduct, when she allegedly failed to properly report off sick from work. She was *not* fired by Employer for being physically unable to perform her job. On appeal to this Court, the referee's conclusion that Claimant's behavior did not constitute willful misconduct is not challenged, but whereas Employer fired Claimant for the reason *that she could work and did not, the Board now argues that it properly denied benefits because Claimant wants to work, but cannot.*

 Because Claimant registered for unemployment compensation benefits, it is presumed that she was able and available for work. *GTE Products Corp. v. Unemployment Compensation Board of Review,* 141 Pa. Commonwealth Ct. 628, 596 A.2d 1172 (1991), *petition for allowance of appeal denied,* 530 Pa. 648, 607 A.2d 257 (1992). Once Claimant established a prima facie case of availability for work, the burden shifted to Employer to present evidence that the claimant was unable and unavailable for work. *Jones & Laughlin Steel, Inc. v. Unemployment Compensation Board of Review,* 83 Pa. Commonwealth Ct. 200, 477 A.2d 41 (1984). In our view, Employer failed to produce any evidence to rebut this presumption and therefore failed to overcome its burden.

 The Board relied solely upon Exhibit 6c, the physician's certification by Dr. Kelley, to support its conclusion that Claimant was unable and unavailable for work. Exhibit 6c is the only evidence in the record indicating that Claimant was unable to work after Claimant's hospitalization in July of 1992. In that exhibit, Dr. Kelley stated that it was "unknown" when Claimant would be able to accept full employment and listed physical limitations that would impact on the type of employment she could accept. The record reveals, however, that *Employer* objected to the introduction of Exhibit 6c on the ground that it was hearsay and the referee *sustained* the objection. Therefore, Exhibit 6c was not admitted into evi-

dence and accordingly the Board was precluded from considering it. The rule to be applied is that unless the Board takes additional testimony, it is restricted to reviewing the evidence submitted to the referee. *Tener v. Unemployment Compensation Board of Review*, 130 Pa. Commonwealth Ct. 433, 568 A.2d 733 (1990); 34 Pa.Code § 101.106. Hence, the Board erred in relying on Exhibit 6c to support its finding that Claimant was unable to work.[4] Because there is no other evidence in the record indicating that Claimant was unable to work, the Board's finding in that regard is not supported by substantial evidence; it is not supported by any evidence.

■ Moreover, even if Exhibit 6c had been properly admitted into evidence, that exhibit does not demonstrate that Claimant was totally disabled. In Exhibit 6c, Dr. Kelley stated that Claimant should not lift in excess of ten pounds, should avoid long periods of standing and sitting, and should limit the duration of her work. In our view, those limitations indicate that Claimant was not totally disabled and, therefore, was able and available for some type of work. Indeed, she had worked for this Employer under such similar limitations.

Were we to allow the Board to consider Exhibit 6c as evidence, we would, in effect, be permitting the Employer to take advantage of evidence on appeal which it had excluded to

4. The Board, relying on *Dorsey v. Unemployment Compensation Board of Review*, 41 Pa. Commonwealth Ct. 479, 399 A.2d 809 (1979), argues that it properly considered Exhibit 6c, because the doctor's report was admissible under the "rule of representative admissions." This rule allows an admission of the declarant to be considered in evidence because it was made through, or by, an agent who had the authority to make the statement on behalf of her principal. *See* Packel & Poulin, *Pennsylvania Evidence* § 805.3 (1987). However, *Dorsey* is distinguishable because there the claimant's objection to the physician's statement was *overruled*. Here, however, it was the *Employer* who, at the hearing before the referee, objected to Exhibit 6c and succeeded in excluding it as inadmissible hearsay. Claimant never objected to the referee's determination that Exhibit 6c was inadmissible hearsay, and, therefore, the issue of whether Exhibit 6c was admissible as a representative admission was waived because it was not an issue before the Board. *Dehus v. Unemployment Compensation Board of Review*, 118 Pa. Commonwealth Ct. 344, 545 A.2d 434 (1988).

the detriment of the Claimant before the referee. As the saying goes, Employer "may not have it both ways."

Accordingly, the decision of the Board is reversed.

## ORDER

NOW, March 30, 1994, the order of the Unemployment Compensation Board Review in the above-captioned matter is hereby reversed.