**Erin N. SCHAAL, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 10, 2004.
Decided Feb. 25, 2005.
Reargument Denied April 22, 2005.

Richard T. Ruth, Erie, for petitioner.

Gerard M. Mackarevich, Deputy Chief Counsel and James K. Bradley, Asst. Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Erin N. Schaal (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) affirming a decision of the Unemployment Compensation Referee (Referee) that denied her application for unemployment compensation benefits. We affirm.

In 2000, Claimant began working full-time for Borecky Fruit Farm (Employer). Her job duties included hiring and firing employees and managing the crew that picked apples and performed other duties related to Employer's production, packaging and marketing of apples. Claimant also pruned trees, mowed the orchards, maintained the farm store, waited on customers, cleaned and maintained the farm's apple storage areas, managed the farm's orchard tours and hired the actors who worked at the farm's October "haunted barn" tours. In 2002, the farm experienced a crop failure and no apples were picked, stored, processed or sold. In the spring of 2003, Claimant assisted with the pruning of fruit trees and preparing the farm for the upcoming growing season.

On November 29, 2003, Claimant's employment was terminated. Her final bi-weekly net rate of pay was $850.00. She filed an application for unemployment compensation benefits on November 30, 2003. The Unemployment Compensation Service Center (Service Center) issued a Notice of Financial Determination (first Financial Determination) finding Claimant to be ineligible for benefits because no wages were reported by any employer under Claimant's social security number during the July 1, 2002 to June 30, 2003 base year. The first Financial Determination also gave Claimant the opportunity to provide the Service Center with pay stubs and W–2 forms to substantiate her claim. On December 17, 2003, Claimant filed a petition for appeal from the first Financial Determination arguing that she did, in fact, earn wages from Employer during the relevant base period.

By correspondence dated December 30, 2003, the Service Center vacated the first Financial Determination and notified Claimant that an investigation was underway. On February 24, 2004, the Service Center issued a second Notice of Financial Determination (second Financial Determi-

nation) finding Claimant to be ineligible for benefits, again on the basis that no wages were reported by any employer under her social security number during the relevant base period. Claimant timely appealed the second Financial Determination, contending that her wages should have been reported by Employer.

After conducting an evidentiary hearing, the Referee determined that Claimant performed agricultural labor services for Employer and that the wages she received therefrom during her base year were not earned in "employment." Therefore, the Referee concluded that Claimant was financially ineligible for benefits under Sections 401(a) and 404(c) of the Unemployment Compensation Law (Law).[1] Claimant appealed the Referee's decision to the Board, contending that she qualified for benefits under one of the statutory exceptions for services performed by an individual engaged in agricultural labor. On July 19, 2004, the Board affirmed the Referee's decision, adopting his findings of fact and conclusions of law in full. This appeal followed.[2]

■ Section 401(a) of the Law provides, *inter alia*, that compensation will be paid to any employee who becomes unemployed and has received wages for employment within the applicable base year. *Worobec v. Unemployment Compensation Board of Review*, 112 Pa.Cmwlth. 643, 536 A.2d 467 (1988). In unemployment cases, it is the claimant's burden to prove eligibility for benefits. *Id.* This requires proof that the claimant was "employed" as that term is defined within the meaning of the Law. *Id.*

Pursuant to Section 4($l$)(1) of the Law, employment is defined as all personal service performed for remuneration.[3] Section 4($l$)(4)(1) of the Law generally excludes agricultural labor services from the definition of employment.[4] However, Section 4($l$)(3)(G)(a) of the Law contains specific exceptions to the agricultural labor exclusion, defining employment to include services performed by an individual in agricultural labor when:

(a) [s]uch service is performed for a person who—

(1) during any calendar quarter in either the current or the preceding calendar year paid remuneration in cash of [$20,000.00] or more to individuals employed in agricultural labor ...; or

(2) for some portion of a day in each of [20] different calendar weeks ... in either the current or the preceding calendar year, employed in agricultural labor ... [10] or more individuals....

43 P.S. § 753($l$)(3)(G)(a).

■ On appeal, Claimant argues that the Board erred in failing to consider the exception to the statutory exclusion of wages for agricultural labor provided in Section 4($l$)(3)(G)(a)(1) of the Law.[5] However, we first address the Board's allegation that Claimant waived this issue by failing to raise it during the evidentiary hearing.

■ A claimant waives review of an issue by failing to raise it before the referee

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 801(a) and 804(c).

2. Our review of a Board decision is limited to determining whether constitutional rights were violated, errors of law were committed, or essential findings of fact are not supported by substantial evidence. *Watkins v. Unem-*

*ployment Compensation Board of Review,* 751 A.2d 1224 (Pa.Cmwlth.2000).

3. 43 P.S. § 753($l$)(1)

4. 43 P.S. § 753($l$)(4)(1).

5. 43 P.S. § 753($l$)(3)(G)(a)(1).

when he had an opportunity to do so. *Dehus v. Unemployment Compensation Board of Review*, 118 Pa.Cmwlth. 344, 545 A.2d 434 (1988) (due process claim related to notice was not preserved for appeal to the Board because the claimant failed to raise the theory during the referee proceedings). In *Watkins*, we held that the claimant's failure to object to a Board order remanding her case for a *de novo* hearing constituted a waiver of any issues dealing with the remand. *See also Pifer v. Unemployment Compensation Board of Review*, 163 Pa.Cmwlth. 62, 639 A.2d 1293 (1994) (the claimant's failure to object to a referee's hearsay determination at the evidentiary hearing constituted a waiver of that legal issue).

The Board contends that the only issue raised and preserved before the Referee was whether Claimant was engaged in agricultural labor. We disagree. Although Section 4($l$)(3)(G)(a)(1) of the Law was never specifically raised before the Referee, the testimony elicited at the hearing, in addition to the Referee's findings, establish that the issue was raised indirectly. On cross-examination, Employer testified as follows:

> [Claimant's Counsel]: [D]o you believe [Claimant] was making $850.00 after taxes every two weeks?
>
> [Mr. Borecky (for Employer) ]: Yeah, I have the documentation of that off my Quickbooks thing.
>
> [Claimant's Counsel]: Okay and you agree that the W2 was an accurate representation of what [Claimant] earned in the calendar year 2003?
>
> [Mr. Borecky]: Yeah, that also agrees with Quickbooks which I printed off.
>
> . . . .
>
> [Claimant's Counsel]: So you'd agree that [Claimant] was making more then [sic] $20,000.00 a year?
>
> [Mr. Borecky]: Yes.

> [Claimant's Counsel]: And regarding the 10 employees in any quarter, do you have any records with you that show that one way or the other?
>
> [Mr. Borecky]: No, when I called in and asked what I needed to bring with me, no one mentioned that to me, so I didn't bring it.

(R.R. 24a)

The Referee made several factual findings based on this testimony, namely that Claimant's final net bi-weekly rate of pay was $850.00 and that Employer did not employ in agricultural labor ten or more individuals during the relevant time frame. (F.F.1, 15) Significantly, these findings specifically relate to the statutory exclusions provided in Section 4($l$)(3)(G)(a) of the Law, as set forth in detail above. It is not unreasonable to infer that the Referee considered Section 4($l$)(3)(G)(a)(1) of the Law and found it to be inapplicable to the present case. We conclude, therefore, that the issue of the $20,000.00 exception to the agricultural labor exclusion was adequately preserved at the evidentiary hearing for purposes of appeal to the Board.

■  We now turn to the merits of this case. Claimant does not dispute the Referee's determination that the services she performed for Employer constituted agricultural labor. Rather, she maintains that the Referee should have found that she qualifies for the statutory exclusion set forth in Section 4($l$)(3)(G)(a)(1) of the Law because Employer admittedly paid her more than $20,000.00 per year for those services. We do not agree.

To reiterate, an individual performing agricultural labor services is not eligible for benefits under Section 4($l$)(3)(G)(a)(1) of the Law absent proof that the services were performed for a person who paid $20,000.00 or more to individuals employed

in agricultural labor. Significantly, the statute specifies that this amount be determined by *calendar quarter* for the current or preceding calendar year.[6]

Initially, we note that Claimant misreads Section 4(*l*)(3)(G)(a)(1) of the Law as providing an exclusion for wages calculated on the basis of a *calendar year,* rather than a *calendar quarter.* In addition, while Claimant established that her final bi-weekly net pay was $850.00, totaling more than $20,000.00 during the 2003 calendar year, these facts do not support a conclusion that Employer paid remuneration of $20,000.00 or more to individuals employed in agricultural labor during any calendar quarter in any of the applicable calendar years. As such, we find that the Referee did not err in failing to apply Section 4(*l*)(3)(G)(a)(1) of the Law to the present case. Accordingly, we affirm the order of the Board.

Judge SMITH–RIBNER concurs in the result only.

### ORDER

AND NOW, this 25th day of February, 2005, the July 19, 2004 order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

---

6. Section 4(d) of the Law defines "calendar quarter" as:

the period of three consecutive calendar months ending on March [31st], June [30th], September [30th] or December [31st], or the equivalent thereof, as determined in accordance with general rules of the [Board]. 43 P.S. § 753(d).