# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

LaKesia Phillips,                :
             Petitioner     :
                         :
          v.                 :    No. 761 C.D. 2019
                         :    Submitted: November 1, 2019
Unemployment Compensation Board    :
of Review,                     :
            Respondent    :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE ELLEN CEISLER, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: January 6, 2020**

LaKesia Phillips (Claimant), proceeding pro se, petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) dated May 31, 2019, which affirmed the decision of a Referee denying Claimant benefits pursuant to Section 402(b) of the UC Law (Law).[1]  On appeal, Claimant essentially

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (providing that a claimant is ineligible to receive UC benefits for "unemployment [that] is due to voluntarily leaving work without cause of a necessitous and compelling nature").  In her brief to this Court, Claimant asserts "43 P.S § 402 was repealed on May 22, 1933" and, therefore, "[i]t was not clear from the Board[']s [Order] which title [it] w[as] referring to [because] Section 402 of" the Law "does not exist."  (Claimant's Brief at 10-11, 15.)  However, in concluding that Section 402 of the Law does not exist, Claimant confuses the Purdon's unofficial numbering with that of the Law.  While we acknowledge the difference in numbering can be confusing, it is clear that the Board concluded Claimant was not eligible under Section 402(b) of the Law, not 43 P.S. § 402 as Claimant suggested.

argues that the Board erred in concluding that she did not demonstrate a necessitous and compelling reason for quitting her employment. Upon review, we affirm.

Claimant worked as a part-time certified nursing assistant (CAN)/home health aide for Interim Healthcare Transitional Care (Employer) from September 14, 2016, until December 10, 2018. On February 7, 2019, Claimant applied for UC benefits. (Certified Record (C.R.) Item 1.) UC authorities requested Employer and Claimant submit questionnaires. In its questionnaire, Employer indicated that Claimant voluntarily left employment by abandoning her job. (C.R. Item 2.) Claimant provided conflicting responses in her questionnaire. In response to question three, Claimant indicated that she quit her job with Employer. (C.R. Item 3.) However, in response to questions four and seven, Claimant indicated that she did **not** quit her job. (*Id.*).

Thereafter, the Harrisburg Overflow UC Center (Service Center) issued a Notice of Determination concluding that Claimant was ineligible to receive UC benefits under Section 402(b) of the Law because Claimant did not demonstrate a necessitous and compelling reason for quitting her job with Employer. (Notice of Determination, C.R. Item 6.) Claimant timely appealed the Service Center's determination by the filing of a petition for appeal. (C.R. Item 7.) In her petition for appeal, Claimant indicated the reason for filing the appeal was that she did **not** quit or abandon her job. (*Id.*) Thereafter, a Referee conducted a hearing on April 15, 2019, at which Claimant and a representative of Employer testified.

Claimant testified, in relevant part, as follows. On December 10, 2018, Claimant told her client that she "needed a couple months off," and in response, her client stated "she wanted her grandson to . . . do the work" that Claimant was currently performing. (Hearing Transcript at 4, C.R. Item 10.) The following day,

Claimant called her Employer and left a voicemail stating that she "needed two months off" and that her client "wanted her grandson to do the work" that Claimant was performing. (*Id.* at 5.) Claimant testified that she needed the two months off because she "had [a] situation that [she] had to take care of." (*Id.*) Claimant subsequently testified that she was "incarcerated on December 12th." (*Id.* at 10). Claimant further testified that on February 5, 2019, she contacted her Employer to set up a meeting about returning to work. A meeting was set up, but Claimant did not attend the meeting because she could not get transportation to it. (*Id.* at 6.) Claimant did not call Employer to say that she could not make the meeting nor did she follow-up with Employer thereafter. (*Id.*)

The quality assurance manager (Manager) for Employer testified, in relevant part, as follows. Sometime in December 2018, Employer received a call from Claimant's client, who stated that Claimant did not show for work. (*Id.* at 7, 9.) This prompted Employer to attempt to contact Claimant and her emergency contact; however, Employer could not reach either. (*Id.* at 7.) In February 2019, Claimant reached out to say that she was ready to return to work. (*Id.*) The Manager informed Claimant that she needed to come into the office because Employer had not heard from her in two months and Employer "needed to know what was going on with" Claimant before "sen[ding] her back in the field." (*Id.* at 8.) The Manager set up a meeting with Claimant for February 14, 2019, but had not heard from Claimant since setting up the meeting. (*Id.*) The Manager concluded by stating that had Claimant attended the meeting on February 14 there would have been continuing work available for her. (*Id.*)

After the hearing, the Referee issued a decision, concluding that Claimant was ineligible for compensation under Section 402(b) of the Law. (Referee's Decision.) The Referee made the following relevant findings of fact:

1. The [C]laimant was last employed with [Employer] as a part time CNA/home health aide, working 50 hours per week, at a pay rate of $11.50 per hour. The [C]laimant was employed from September 14, 2016 and her last day of work was December 10, 2018.

2. After the last day of work, the [C]laimant stopped working with the client because she needed two months off to handle a situation.

3. On February 5, 2019, the [C]laimant texted and spoke with the [E]mployer; the [E]mployer set up a meeting for the [C]laimant to meet with her to discuss future employment.

4. The [C]laimant never attended the meeting a[nd] did not contact the [E]mployer.

5. The [C]laimant voluntarily left her job.

(*Id.*, Findings of Fact ¶¶ 1-5.) The Referee, while crediting Claimant's testimony, concluded that Claimant's testimony did not demonstrate "a necessitous and compelling reason for leaving employment at the time the Claimant did or that the Claimant acted with ordinary common sense and made a good faith effort to preserve the employment." (*Id.* at 2.)

Claimant subsequently appealed to the Board, again arguing that she did not voluntarily quit her job with Employer and that Employer never offered Claimant her job back. The Board modified the Referee's first finding of fact to read "[t]he [C]laimant was employed as a CNA/home health aide from September 14, 2016, to December 10, 2018, at a final rate of $11.50 per hour." (Board's Order.) Other than this modification, the Board adopted and incorporated the Referee's findings of fact

4

and conclusions of law and affirmed the Referee's Decision. The Board reasoned as follows:

> On appeal, the [C]laimant asserts that she did not abandon her job and that the [E]mployer never offered her the job back after she took two months off from work. The [C]laimant, however, acknowledged that she did not attend a subsequent meeting to discuss her future employment. Based on this evidence, and the fact [that] the [C]laimant testified that she did not contact the [E]mployer after the meeting date, the Board determines that the Referee was correct in determining that the [C]laimant quit her job.

(*Id.*) Claimant later sought reconsideration of the Board's Order, which the Board denied. (C.R. Item 16.)

On appeal to this Court,[2] Claimant essentially argues that the Board erred by concluding that she did not have a necessitous and compelling reason for voluntarily quitting[3] her job with Employer. In her brief to this Court, Claimant alleges:

> On December 10, 2018, while at work . . . I received a phone call from my mother about the sheriffs surrounding my apartment showing photos of me to neighbors, with an active warrant. As one could imagine, the burden was great and I became fearful.
>
> At the end of my shift I spoke with [my] client and requested 2 months off. She approved my request, [I] called Employer, to make same request, receive[d] answering machine, left message for my request

---

[2] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[3] On one page of her brief, Claimant appears to state that the Board erred in finding that she did **not** voluntarily quit her job with Employer. (Claimant's Br. at 6.) However, as Claimant apparently recognizes elsewhere in her brief, the Board did find that Claimant voluntarily quit her job. The Board, other than modifying the Referee's first finding of fact, adopted the findings of the Referee who found that Claimant "voluntarily left her job." (Referee's Decision, Findings of Fact ¶ 5.)

5

[sic]. I got no response within the time of surrendering. . . . [O]ut of necessity, I voluntarily quit my job to surrender to Police Officials.

(Claimant's Brief (Br.) at 9.) In her petition for review Claimant avers the reason she had to turn herself into law enforcement was because she "had to do a 54[-]day county jail **sentence**." (Petition for Review at 3 (emphasis added).) Claimant asserts that the foregoing circumstances demonstrate she had a necessitous and compelling reason for leaving her employment with Employer because she had to turn herself into law enforcement.

In response, the Board contends:

Beginning with Claimant's responses in her [] [q]uestionnaire through her appeal to the Board, Claimant has consistently argued she did not quit. In her appeal to this Court, Claimant admits she quit and argues for the first time that she had a necessitous and compelling reason for doing so because she needed to surrender herself to the police.

(Board's Br. at 6 (internal citation omitted).) As such, the Board argues, Claimant has waived the issue of whether she quit her job with Employer by admitting in her brief that she did in fact quit. The Board further argues that Claimant has also waived the issue of whether she had a necessitous and compelling reason for quitting her job by not raising the issue below. The Board asserts that even if Claimant had raised the issue below, she has not demonstrated she had a necessitous and compelling reason for quitting her job because "incarceration is not a necessitous and compelling reason to quit employment." (*Id.* at 8.) Additionally, the Board asserts that Claimant did not take reasonable steps to maintain her employment with Employer because she failed to show up at a meeting "with Employer to restart her employment." (*Id.*)

To this Court, Claimant argues the Board erred by concluding that she did not demonstrate a necessitous and compelling reason for quitting her employment.

6

However, at all intradepartmental stages, Claimant maintained that she did not quit her job with Employer. While Claimant indicated in question three of her questionnaire she quit her job, she indicated in her responses to questions four and seven that she did not quit her job. (C.R. Item 3.) Specifically, her responses to questions four and seven state, "**I did not quit**." (*Id.* (emphasis added).) Further, before both the Referee and the Board, Claimant asserted that she did not quit her job with Employer. (C.R. Items 7, 12.) It was not until Claimant appealed to this Court that she admitted to the fact that she quit her job. (Claimant's Br. at 9.) Claimant's theory of the case at all intradepartmental stages was contrary to what she now argues before this Court. Claimant had to raise before the Referee and/or the Board the issue of whether she had a necessitous and compelling reason to quit, at least as an alternative argument, where they could make findings of fact. *Schaal v. Unemployment Comp. Bd. of Review*, 870 A.2d 952, 954-55 (Pa. Cmwlth. 2005) ("A claimant waives review of an issue by failing to raise it before the referee when [the claimant] had an opportunity to do so."). Because Claimant did not raise this issue below, the issue is not preserved for our review. Even if Claimant had preserved this issue, she has not met her burden of demonstrating that she has a necessitous and compelling reason for quitting her job with Employer.

Whether Claimant had a necessitous and compelling reason for voluntarily quitting her job with Employer "is a question of law fully reviewable by this Court." *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 661 (Pa. Cmwlth. 2006). Claimant bears the burden of proving that she had a necessitous and compelling reason for quitting her employment. *RIO Supply, Inc. of PA v. Unemployment Comp. Bd. of Review*, 124 A.3d 401, 404 (Pa. Cmwlth. 2015). To demonstrate a necessitous and compelling reason for leaving

7

employment, Claimant must demonstrate the following: "(1) circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) [she] acted with ordinary common sense; and, (4) [she] made a reasonable effort to preserve her employment." *Havrilchak v. Unemployment Comp. Bd. of Review*, 133 A.3d 800, 804 (Pa. Cmwlth. 2015).

To this Court, Claimant argues that "out of necessity" she quit her job with Employer in December 2018 "to surrender to Police Officials," (Claimant's Br. at 9), in order to serve "a 54[-]day county jail **sentence**," (Petition for Review at 3 (emphasis added)). However, we have previously held that incarceration due to a criminal conviction does not rise to the level of a necessitous and compelling quit because "an employee who engages in activities punishable by imprisonment must realize that her ability to work may be jeopardized." *Violi v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 982 C.D. 2011, filed December 30, 2011), slip op. at 5-6. The public policy purpose of the Law is to provide "compensation for loss of wages by employes during periods when they become unemployed through **no fault of their own.**" Section 3 of the Law, 43 P.S. § 752 (emphasis added). Claimants that are unemployed due to post-conviction criminal incarceration are not "unemployed through no fault of their own," 43 P.S. § 752; rather those claimants are unemployed directly from their own conduct in engaging in criminal activity. Therefore, the fact that Claimant had to abandon her job due to a sentence of incarceration does not rise to the level of a necessitous and compelling voluntary quit because her inability to work was due to her own fault in engaging in activity that led to her incarceration.

To the extent that Claimant argues she made a reasonable effort to preserve her job with Employer after her release, we disagree because Claimant did not attend a scheduled meeting with Employer. Manager testified at the hearing before the Referee that there was continuing work available for Claimant. (Hearing Transcript at 8, C.R. Item 10.) However, Claimant neither attended the meeting nor informed Employer that she could not attend the meeting. (*Id.* at 6, 8). While Claimant alleges that she could not get transportation to the meeting, (*id.* at 6), she should have followed up with Employer to attempt to reschedule the meeting or make other arrangements. Additionally, Claimant did not follow up with Employer after missing the meeting. (*Id.*) Therefore, even if Claimant had not waived the issue of whether she had a necessitous and compelling reason for quitting her job with Employer, we could not conclude that Claimant met her burden of demonstrating a necessitous and compelling reason for quitting or that she made reasonable efforts to preserve her employment.

Accordingly, we affirm the Order of the Board.

_____
**RENÉE COHN JUBELIRER,** Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

LaKesia Phillips,                                 :
                        Petitioner              :
                                                :
            v.                                  :       No. 761 C.D. 2019
                                                :
Unemployment Compensation Board                 :
of Review,                                      :
                        Respondent              :

# **O R D E R**

    **NOW**, January 6, 2020, the Order of the Unemployment Compensation Board of Review dated May 31, 2019, is **AFFIRMED**.

 

                                         _____

                                         **RENÉE COHN JUBELIRER,** Judge